**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| Dr. Ameca Thomas,<br><br>Plaintiff,<br><br>vs.<br><br>Laurens County School District 55; Cathy Little, *in her individual and official capacity*; James "Bubba" Rawl, *in his individual and official capacity*; Todd Varner, *in his individual and official capacity*; William Neal Patterson, *in his individual and official capacity*; Mike Hughes, *in his individual and official capacity*; Chip Jenkins, *in his individual and official capacity*; Heather Elders, *in her individual and official capacity*; Tabitha Keitt, *in her individual and official capacity*; and Dr. Jody Penland, *in his individual and official capacity*,<br><br>Defendants. | Civil Action No. 6:24-cv-6650-TMC<br><br>**ORDER** |

Plaintiff Dr. Ameca Thomas ("Dr. Thomas") brought this employment discrimination action against Defendant Laurens County School District 55 (the "District") and nine school board members in their individual and official capacities. Dr. Thomas asserts six causes of action in her complaint: (1) race discrimination in violation of Title VII against the District and all individual Defendants in their official capacities (ECF No. 1 at 15); (2) breach of contract in violation of South Carolina state law against the District and all individual Defendants in both their individual and official capacities (ECF No. 1 at 17); (3) retaliation in violation of Title VII against the District and Defendants Cathy Little, Mike Hughes, Tabitha Keitt, Heather Elders and Chip Jenkins in both their individual and official capacities (ECF No. 1 at 20); (4) retaliation in violation of local school

board policy against the District and Defendants Cathy Little, Mike Hughes, Tabitha Keitt, Heather Elders and Chip Jenkins in both their individual and official capacities (ECF No. 1 at 21); (5) civil conspiracy in violation of state law against all individual Defendants in their individual capacities (ECF No. 1 at 21); and (6) intentional infliction of emotional distress in violation of state law against Defendants Cathy Little, James "Bubba" Rawl, Todd Varner, Willaim Neal Patterson, and Mike Hughes in their individual capacities (ECF No. 1 at 24).

In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was automatically referred to a United States Magistrate Judge for all pretrial proceedings. After slightly more than a year of discovery, Defendants collectively filed a Motion for Summary Judgment, (ECF No. 30). The motion was fully briefed, *see* (ECF Nos. 38, 39), and the magistrate issued a Report and Recommendation ("Report"), recommending that the Court grant Defendants' motion for summary as to Dr. Thomas's Title VII claims; decline to exercise supplemental jurisdiction over her remaining claims, all of which arise under state law; and deny the remainder of Defendants' motion as moot. (ECF No. 42 at 15). Dr. Thomas submitted objections to the Report, (ECF No. 49), to which Defendants replied, (ECF No. 50). Defendants likewise filed objections, (ECF No. 43), to which Dr. Thomas replied, (ECF No. 47). In light of the thorough briefing submitted by the parties, as well as the materials presented to the Court, the Court has determined that the issues before it have been adequately developed by the parties and, as a result, a hearing is unnecessary for the Court to render a decision on Defendants' summary judgment motion.

## I. Background

The Report thoroughly summarizes the relevant general background facts in this case. (ECF No. 42 at 1–4). Because the parties do not take issue with the magistrate judge's recitation

of these background facts, the Court need not recount them at length here. The Court adopts the statement of background facts set forth in the Report and gives the following summary to provide general context. Starting in 2000, Dr. Thomas worked for the District in various instructional and administrative roles. (ECF No. 1 at 4). On July 1, 2020, Dr. Thomas was appointed by the Board as District Superintendent. *Id. See also* (ECF No. 30 at 5). Dr. Thomas was the first female African American to serve as Superintendent for Laurens District 55. In January 2021, Defendant Cathy Little ("Little") became Chairperson of the Board; the relationship between Little and Dr. Thomas was contentious for the rest of Dr. Thomas's tenure as Superintendent. *See* (ECF Nos. 1 at 7; 30 at 5–6). From Dr. Thomas's perspective, Little micromanaged her and attempted to undermine her, constantly questioning her decisions in private and during public meetings and frequently sending emails, even after working hours, asking questions and seeking information. *See* (ECF Nos. 1 at 9–10; 30 at 5–6). According to Dr. Thomas, Little told her to fire two African American principals in the District and solicited complaints about Dr. Thomas from the community in order to cast her in a negative light. (ECF No. 30 at 6 – 7) (citing to Plaintiff's Deposition p. 65, lines 10–25; p. 66, lines 1–10). Dr. Thomas testified that Little's demeaning, uncivil and meddling approach was meant to intimidate and threaten her because of her race, and that two African American Board members who supported her were excluded from discussions occurring outside of regularly scheduled public Board meetings. (ECF No. 1 at 14–15).

Believing that the Board intended to terminate Dr. Thomas's employment at a Board meeting scheduled for February 27, 2023, 200 of her supporters attended the meeting. *Id.* at 10. No action was taken on her contract, but Dr. Thomas indicated that harassing behavior from Little continued following the meeting, including Little's request that law enforcement personnel attend subsequent meetings. *Id.* at 10–11. Nonetheless, the Board unanimously approved an "excellent"

rating for Dr. Thomas's performance in the summer of 2023. (ECF No. 30 at 11) (citing Plaintiff's Deposition p. 159, lines 1–16).

On October 11, 2023, Dr. Thomas applied for the CEO position of a non-profit organization, which she was offered on December 21, 2023, and accepted on December 27, 2023. (ECF No. 30 at 12). At Dr. Thomas's request, a special Board session was held on January 4, 2024, at which time she tendered her resignation, which the Board voted to accept. *Id.* The two African American Board members voted against accepting her resignation. (ECF No. 1 at 15).

## II. Report

***Liability of the individual Defendants under Title VII.*** Noting that Dr. Thomas did not address Defendants' argument that her Title VII claims against the individual Defendants should be dismissed, the magistrate judge stated that "[i]t is well-established in this circuit that individuals cannot be liable in their individual or official capacities for violations of Title VII" and recommended that such claims be dismissed as to all individual Defendants. (ECF No. 42 at 6). Dr. Thomas did not object to the magistrate judge's conclusion and recommendation in this regard. The court agrees with the Report and dismisses the Title VII claims with prejudice as to the individual Defendants for the reasons set forth in the Report.

***Race Discrimination – Hostile Work Environment.*** Dr. Thomas contends she was subjected to a hostile work environment because of her race in violation of Title VII. A plaintiff alleging a hostile work environment claim "must show (1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Barnhill v. Bondi*, 138 F.4th 123, 140 (4th Cir. 2025) (internal quotation marks omitted). Focusing on the "severe and pervasive" component, the magistrate judge considered

"'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (ECF No. 42 at 7 (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993)). The magistrate judge determined that the evidence presented by Dr. Thomas, even considered in a light most favorable to her as the non-moving party, does not reflect the "severe and pervasive" conduct required for a Title VII hostile work environment claim, noting that, "[a]t best, the evidence shows that the plaintiff's hostile work environment claim is based largely on a lack of respect from defendant Little." *Id*. at 8. The magistrate judge also concluded the evidence provided by Dr. Thomas shows that Defendants' conduct "did not unreasonably interfere with the plaintiff's job performance" as "the District's test scores increased from 2021 to 2023" and Dr. Thomas received an excellent rating from the Board in the summer of 2023. *Id*. at 9–10. Accordingly, the magistrate judge recommends that the court grant the motion for summary judgment as to the District as well as the individual Defendants.

***Constructive Discharge.*** "To prove constructive discharge, 'the plaintiff must demonstrate first that he was, in fact, constructively discharged—*i.e*., that the defendant [deliberately] made the working conditions so intolerable as to force a reasonable employee to leave'" and that "he was constructively discharged because of his membership in a protected class." *Rose v. Sumter Cnty. Sch. Dist*., No. 3:20-cv-01008-MGL, 2022 WL 601858, at *3 (D.S.C. Mar. 1, 2022) (quoting *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir. 1996)). As noted by the magistrate judge, (ECF No. 42 at 10), to establish a constructive discharge claim, a plaintiff "must show something more than the showing required for a hostile work environment claim." *Evans v. Int'l Paper Co*., 936 F.3d 183, 193 (4th Cir. 2019) (citation omitted); *see Nnadozie v. Genesis Healthcare Corp*., 730 F. App'x 151, 162 (4th Cir. 2018) (recognizing that the "'intolerability' standard governing

constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims"). The magistrate judge reasoned that, in light of Dr. Thomas's failure "to show that she was subject to conduct that was sufficiently severe or pervasive to establish her hostile work environment claim . . . she is unable to show 'something more' than that, which is what a constructive discharge claim requires." (ECF No. 42 at 10–11 (quoting *Bouknight*, 487 F. Supp. 3d at 462 (internal citations omitted)). Therefore, the magistrate judge recommends that the court grant Defendants' motion for summary judgment on Dr. Thomas's constructive discharge claim.

***Retaliation.*** To show a prima facie case of retaliation under Title VII, a plaintiff must establish that (1) she engaged in protected activity; (2) her employer took adverse action against her; and (3) a causal relationship existed between the protected activity and the adverse employment activity. *Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 217 (4th Cir. 2016). According to Dr. Thomas, she complained orally to the District's Human Resources Director about a hostile work environment, but she does not know when she made such a complaint. Likewise, Dr. Thomas testified that she complained to Defendant Little, but, again, does not remember when that would have occurred. The magistrate judge found that although Dr. Thomas might have engaged in protected activity, she failed to "produce[] any evidence that she faced any materially adverse action *after* complaining about defendant Little and within the 300-day limitations period starting September 16, 2023." (ECF No. 42 at 13).[1] Additionally, the magistrate judge concluded

[1] The Report explains as follows:

> The plaintiff filed her EEOC complaint on July 12, 2024 (doc. 30-1 at 3), which was 300 days after September 16, 2023. South Carolina is a deferral state, which means that the plaintiff must have filed her EEOC complaint within 300 days of the discriminatory acts that form the basis for her retaliation claim. *See* 42 U.S.C. § 2000e-5(e)(1) (setting a 300-day limitations period for Title VII claims filed in a

that even if there was evidence that Dr. Thomas made her complaints within the 300-day period, the "micromanagement, public undermining, erosion of her authority, and increased surveillance of her daily operations" she allegedly suffered as a result "cannot be considered 'materially adverse' employment actions under Title VII." (ECF No. 42 at 13–14). Accordingly, the magistrate judge recommended that the court grant the motion for summary judgment as to the District on the retaliation claim as well.

***State Law Claims.*** Finally, as to Dr. Thomas's remaining claims, all of which arise under state law, the magistrate judge recommends that, if the court grants summary judgment as to the Title VII claims, it should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) as to the remaining state law claims and dismiss them as well.

**III. Standard of Review**

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C.

---

> deferral state); *Talent v. Comm'r of Pub.Works*, No. 2:12-cv-0622-DCN, 2014 WL 971747, at *3 (D.S.C. Mar. 11, 2014) (noting the 300-day limitations period for Title VII claims in South Carolina is implicated by virtue of any EEOC filing). This limitations period for her retaliation claim cannot be extended under the continuing violation doctrine, which allows a court to consider acts before the 300-day limitation period in a hostile work environment claim. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 n.5 (4th Cir. 2019) ("Unlike claims for disparate treatment and retaliation, the continuing violation doctrine applies to a hostile work environment claim.").

(ECF No. 42 at 13 n.6).

§ 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Bros. Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

## IV. Discussion

### A. Dr. Thomas's Objections

***Hostile Work Environment.*** Dr. Thomas contends that in concluding that the evidence she presented does not show the "severe and pervasive" conduct required for a Title VII hostile work environment claim, the magistrate judge improperly "disaggregates the individual incidents and evaluates them in isolation rather than in their totality." (ECF No. 49 at 5). The severe or pervasive element of a hostile work environment has both a subjective and objective component—that is, a plaintiff must demonstrate "that [she] did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (internal quotation marks omitted). The Report focuses on the objective component. "[W]hen determining whether the harassing conduct was objectively severe or

pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). Dr. Thomas must "clear a high bar in order to satisfy the [objective] severe or pervasive test." *Id.* (internal quotation marks omitted).

As noted, the magistrate judge recognized that a court's determination of whether conduct was "severe or pervasive" must rest on consideration of all the circumstances, including the foregoing factors. *See* (ECF No. 42 at 7). The Report explained in pertinent part:

> Here, the evidence – construed in a light most favorable to the plaintiff as one must do on a motion for summary judgment – shows that defendant Little micromanaged the plaintiff's performance of her superintendent duties by frequently scheduling meetings (doc. 30-10 at 8–9, Thomas dep. 51:20–52:10) and emailing the plaintiff daily (doc. 38-3 at 6–7, Nance dep. 22:20–23); raised her voice at the plaintiff once (doc. 38-4 at 18, Carpenter dep. 93:7–25); pressured the plaintiff to replace two African-American principals with Caucasian individuals recommended by defendant Little (doc. 30-10 at 15, Thomas dep. 65:10–19); and stated that there was "no one to compare [the plaintiff] to" and she did not want the plaintiff to be the "face" of the district (doc. 38-6 at 4; doc. 30-10 at 5, Thomas dep. 48:48:17–20).3 It is not clear from the evidence when all of these events happened. Nevertheless, the alleged conduct was not "severe or pervasive enough to show an abusive environment." *Decoster v. Becerra*, 119 F.4th 332, 339 (4th Cir. 2024). At best, the evidence shows that the plaintiff's hostile work environment claim is based largely on a lack of respect from defendant Little.

(ECF No. 42 at 8). The magistrate judge cited a number of cases in which similar treatment was found not to rise to the level of "severe and pervasive." *See id.* at 8–9. In particular, a court in this district recently determined in a race discrimination case brought against a school district that a supervisor's micromanaging and undermining the employee; raising his voice at her on several occasions; mocking her "African American vernacular" and correcting her speech in a "condescending way"; implying that she was not intelligent; and calling her a "bit--" at a meeting did not amount to the severe and pervasive conduct required to establish a hostile work environment claim at the summary judgment stage). *Green v. Florence Sch. Dist. One.*, C.A. No.

4:23-cv-5267-JD-TER, 2026 WL 679063, at *6 (D.S.C. Jan. 12, 2026), *adopting report and recommendation*, 2026 WL 539231 (D.S.C. Feb. 26, 2026). *See also Hillman v. Austin*, No. 2:20-cv-03225-DCN-MGB (D.S.C. July 22, 2022) (concluding in a race-based hostile work environment case that supervisor's micromanaging conduct was not "severe and pervasive" for purposes of Title VII where the supervisor's conduct included micromanaging the plaintiff and following her around at work, keeping her under constant surveillance, physically assaulting her, speaking to her in a "loud and threatening" manner during her break, and giving employees of a different race than plaintiff preferential treatment by allowing them to arrive late and take extended lunch breaks), *adopting report and recommendation*, 2022 WL 4481418 (D.S.C. Sept. 27, 2022). "[C]ase law has long held that rudeness, bullying, and harsh management styles generally do not meet the requisite standard to establish a [hostile work environment claim]," *Bouknight v. S.C. Dep't of Corr.*, 487 F. Supp. 3d 449, 469 (D.S.C. 2020) (internal quotation marks omitted), in contrast to a workplace "permeated with discriminatory intimidation, ridicule, and insult," *Harris*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). *Compare Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217 (4th Cir. 2013) (concluding that alleged conduct of a supervisor such as yelling at the plaintiff and pounding her hands on a desk during a meeting; repeatedly "harping" on a previous mistake made by the plaintiff and making snide comments to her; and "unfairly scrutinizing and criticizing" the plaintiff's use of leave was not "severe and pervasive" conduct that would establish a hostile work environment claim), *with Fox v. Gen. Motors Corp.*, 247 F.3d 169, 179 (4th Cir. 2001) (refusing to disturb verdict concluding plaintiff was subjected to a hostile work environment under the ADA where his supervisors "constantly berated" him and other disabled workers in "vulgar and profane language"—referring to disabled employees as "handicapped M___r F____s" and "911 hospital people"—encouraged other employees not to

speak to disabled workers, and injured plaintiff by requiring him to perform tasks exceeding his medical restrictions); *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 205—08 (4th Cir. 2014) (concluding almost *daily* vulgar "sex-based comments" accompanied by obscene gestures directed to plaintiff was sufficient severe and pervasive); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 238–43 (4th Cir. 2000) (finding that a supervisor's "a barrage of threats and gender-based insults" directed at the plaintiff "more than thirty times in the first few weeks" of the plaintiff's employment—for example that "the only way for a woman to get ahead at First Union was to spread her legs" and that women get to "whore [their] way through life"--was sufficiently severe or pervasive where the abusive comments were also sometimes accompanied by physically threatening behavior).

The Court has reviewed the record *de novo* and agrees with the magistrate judge's analysis as set forth in the Report. Furthermore, Dr. Thomas fails in her objection to identify record evidence from which a reasonable jury could find race-based harassment that was sufficiently severe or pervasive to alter the terms and conditions of employment. Instead, the crux of Dr. Thomas's objections as to this issue is that the court must view the facts collectively and under the "totality of circumstances" presented, which she believes the magistrate judge failed to do. See (ECF No. 49 at 8). However, the magistrate judge gave a detailed, thorough analysis of the facts presented, and this court has reviewed the record *de novo* and reached the same conclusion. The Court overrules this objection.

***Unreasonable interference with work performance***. Dr. Thomas further objects to the magistrate judge's conclusion that she did not present evidence that Defendants' conduct unreasonably interfered with her job performance as "the District's test scores increased from 2021 to 2023" and Dr. Thomas received an excellent rating from the Board in the summer of 2023, well

after the conduct at issue had begun, (ECF No. 42 at 9–10). (ECF No. 49 at 8–9). Dr. Thomas argues that "[t]he Magistrate Judge's reasoning would perversely reward Defendants who subject employees to a hostile environment but fail to actually impair their output" because the "Plaintiff is talented enough to succeed despite discriminatory intent." (ECF No. 49 at 9). As noted previously, the question of whether an employer's conduct unreasonably interfered the plaintiff's work performance is merely one factor a court can consider in determining is the conduct was "severe and pervasive." *See Harris*, 510 U.S. at 23. Although Dr. Thomas's argument here has a certain philosophical appeal, Courts have consistently concluded that evidence of success at work and positive job performance reviews suggests the conduct at issue did not unreasonably interfere with a plaintiff's work performance for purposes of a hostile work environment claim. *See Bouknight*, 487 F. Supp. 3d 449 ("[Plaintiff] continued to do her job well for nearly a year and a half. Accordingly, *regardless of how unpleasant Dr. Reagan made the work environment*, it does not appear to have unreasonably interfered with [Plaintiff's] work performance."); *see also Hall v. Cath. Health Initiatives, St. Anthony Hosp*., No. C19-5360 BHS, 2021 WL 1019425, at *9 (W.D. Wash. Mar. 17, 2021) ("There is also no evidence that the harassment unreasonably interfered with [plaintiff's] work performance" because "[she] testified that she has received good reviews every year."); *Valdivia v. Twp. High Sch. Dist*. 214, No. 16 C 10333, 2018 WL 1403221, at *7 (N.D. Ill. Mar. 20, 2018) ("The fact that Ms. Valdivia excelled at her job—and stayed at her job for five years after the alleged discriminatory conduct began—belies her contention that the conduct at issue interfered with her work performance."); *Rosario v. Aunt Martha's Youth Serv. Ctr*., No. 16-05648, 2017 WL 4882365, at *4-5 (N.D. Ill. Oct. 30, 2017) (granting summary judgment on hostile work environment claim where the plaintiff testified that she continued receiving good performance reviews, indicating that the harassment did not affect her job performance); *Joseph*

*v. Cinnamon Hills Youth Crisis Ctr*., No. 2:12-cv-790-DN, 2014 WL 559487, at *5 (D. Utah Feb. 13, 2014) ("[Plaintiff's] own testimony establishes that the alleged religious remarks never unreasonably interfered with his work performance" as "[he] testified that his performance reviews were always good and that he was never denied a promotion or advancement."). The court rejects this policy-based objection to the magistrate judge's conclusion. Furthermore, in her objections, Dr. Thomas does not identify evidence reflecting that the work environment created by the Board and, in particular, Defendant Little—as overbearing as she may have been—unreasonably interfered with Dr. Thomas's job performance. The court overrules this objection.

***Constructive Discharge.*** In light of the requirement that, to establish a constructive discharge claim, an employment discrimination plaintiff "must show 'something more' than the showing required for a hostile work environment claim," *Evans*, 936 F.3d at 193; *see Nnadozie*, 730 F. App'x at 162 (4th Cir. 2018) (recognizing that the "'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims"), the magistrate judge concluded that, because Dr. Thomas's evidence was insufficient to show conduct that was sufficiently severe or pervasive to establish a hostile work environment claim, the same evidence was necessarily insufficient to establish the "something more" required for a constructive discharge claim. (ECF No. 42 at 10–11).

Dr. Thomas objects to the magistrate judge's conclusion on the basis that it "is entirely derivative of [the] hostile work environment analysis," (ECF No. 49 at 10), but offers no authority in support of her suggestion that this approach is improper. Federal courts, in fact, have consistently taken this approach. *See, e.g., Perkins v. Int'l Paper Co*., 936 F.3d 196, 212 (4th Cir. 2019) ("Because we have already concluded that Perkins failed to show he was subjected to a hostile environment, *it necessarily follows* that he cannot show constructive discharge." (emphasis

added)); *Bouknight*, 487 F. Supp. 3d at 462 ("Inasmuch as Bouknight is unable to demonstrate Reagan's conduct was sufficiently severe and pervasive to establish her hostile work environment cause of action, it follows she is unable to show "something more" than that, which is what a constructive discharge claim requires." (internal citation omitted)); *Speach v. Bon Secours Health Sys., Inc.*, No. 6:22-cv-884-HMH-KFM, 2023 WL 2838358, at *9 (D.S.C. Feb. 10, 2023) (same), *adopting report and recommendation*, 2023 WL 2300041 (D.S.C. Mar. 1, 2023), *aff'd*, No. 23-1340, 2023 WL 5526595 (4th Cir. Aug. 28, 2023). And, in any event, the court has conducted *a de novo* review of this claim in light of the record and concludes that Dr. Thomas has not come forward with sufficient evidence to show that her "working conditions became so intolerable that a reasonable person in [her] position would have felt *compelled* to resign." *Perkins*, 936 F.3d at 212 (emphasis added). Accordingly, the court overrules the objections relating to the constructive discharge claim.[2]

***Retaliation***. On Dr. Thomas's retaliation claim, as previously explained, the magistrate judge assumed that Dr. Thomas created a genuine issue of fact as to *whether* she engaged in protected activity but concluded she produced no evidence at all as to *when* she complained. (ECF No. 42 at 13). Accordingly, the magistrate judge reasoned that Dr. Thomas failed to "produce[] any evidence that she faced any materially adverse action after complaining about defendant Little and within the 300-day limitations period starting September 16, 2023." (ECF No. 42 at 13). Dr. Thomas's first objection to this portion of the Report is as follows: "The Magistrate Judge correctly

[2] Dr. Thomas also objects that the "Magistrate Judge improperly construed Plaintiff's efforts to secure alternative employment as undermining her constructive discharge claim," (ECF No. 49 at 10), and implies that the Report erroneously concluded that her resignation "negate[d] [her] constructive discharge" claim, *id*. at 12–13. Dr. Thomas misreads the Report. The magistrate judge reached neither conclusion. *See* (ECF No. 42 at 10–11). Therefore, the court overrules these objections.

notes that the Defendants' arguments about the dates and corroboration of Plaintiff's complaints go to credibility, not to the legal sufficiency of the evidence, and that the Court must not weigh evidence or make credibility determinations on summary judgment. Plaintiff's sworn deposition testimony that she verbally complained to the District's HR director about a racially hostile work environment, and separately complained to Defendant Little, is sufficient to create a genuine dispute of material fact as to protected activity." (ECF No. 49 at 13–14). Dr. Thomas misconstrues the Report. The magistrate judge explicitly stated that her testimony was "sufficient to show a dispute of material fact over whether she engaged in protected activity." (ECF No. 42 at 12). However, the magistrate judge reached no such conclusion as to *when* Dr. Thomas may have engaged in protected activity, and her objections fail to highlight any record support to establish that she suffered materially adverse employment actions after complaining about defendant Little and within the 300-day limitations period.

Furthermore, the magistrate judge concluded that, regardless of when she engaged in protected activity, Dr. Thomas's evidence of "'micromanagement, public undermining, erosion of her authority, and increased surveillance of her daily operations'" do not qualify as "'materially adverse' employment actions under Title VII," for purposes of her retaliation claim. (ECF No. 42 at 13 (citing *Drake v. Sci. Applications Int'l Corp.*, No. 2:17-cv-02664- DCN-MGB, 2019 WL 1574264, at *14 (D.S.C. Mar. 4, 2019), *adopting report and recommendation*, 2019 WL 1571635 (D.S.C. Apr. 11, 2019)). Dr. Thomas objects to this conclusion, arguing that the evidence of the "public undermining of Plaintiff's authority as Superintendent and erosion of her leadership role" was enough to "dissuade a reasonable employee from complaining about discrimination." (ECF No. 49 at 14). To establish a Title VII retaliation claim, a plaintiff must demonstrate that the employer's actions would be considered "materially adverse to a reasonable employee[,]" such

that it would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Alberti v. Rector & Visitors of the Univ. of Virginia*, 65 F.4th 151, 156 (4th Cir. 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). This element creates a lower standard than adverse action requirements in other contexts. *See Simmons v. Spartanburg Cnty*., No. 7:17-cv-02337-TMC-JDA, 2018 WL 6033259, at *4 (D.S.C. Oct. 16, 2018) (explaining that in the Title VII retaliation context, "a different and less strenuous standard is used to define adverse employment actions" meaning that the employer's conduct "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'" (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68)), *adopting report and recommendation*, No. 7:17-cv-2337-TMC, 2018 WL 6018807 (D.S.C. Nov. 16, 2018). Here, Plaintiff relies on essentially the same evidence she offers in support of her hostile work environment claim. (ECF No. 49 at 14). Even under this more flexible standard, however, Dr. Thomas's claims that Defendant Little micromanaged her, encroached on her duties, excluded her from discussions taking place outside of Board meetings, and disrespected her are not adverse employment actions. *See*, e.g., *Drake*, 2019 WL 1574264, at *14 (evidence that supervisor "badmouthed" Plaintiff; "stalked" Plaintiff to closely monitor her work hours; scrutinized her work to a "heightened" degree; embarrassed her and degraded her work in front of co-workers; and excluded Plaintiff from team decisions did not establish adverse employment action for retaliation claim). Accordingly, the court is constrained to overrule this objection as well.

**B. Defendants' Objection**

Defendants submit their objection "to encourage the District Court to exercise jurisdiction over Plaintiff's state law claims" and "to dismiss them with prejudice." (ECF No. 43 at 2). In response, Dr. Thomas argues that, assuming her federal claims are dismissed, the court should

exercise its broad discretion to decline supplemental jurisdiction over the state law claims. (ECF No. 47 at 2). Dr. Thomas points out "no substantial federal judicial resources have been expended on resolving the merits of the state law claims," and, as there is no particular federal interest in retaining jurisdiction, the state law issues presented here are better resolved by the state courts. *Id.* Therefore, Dr. Thomas urges the court to adopt the recommendation of the Report to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) as to the remaining state law claims and dismiss them. The court agrees with Dr. Thomas and overrules the Defendants' objection.

"The Fourth Circuit has made clear that when the federal claims are resolved prior to trial, the district court has 'wide latitude' in determining whether to retain jurisdiction over supplemental state-law claims." *Green v. Florence Sch. Dist. One*, No. 4:23-cv-05267-JD, 2026 WL 539231, at *4–5 (D.S.C. Feb. 26, 2026) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). In exercising that discretion, courts consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. "[W]hen the federal claims are dismissed before trial, these factors [typically] weigh in favor of declining supplemental jurisdiction." *Green*, 2026 WL 539231, at *4–5 (citing *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001)). As set forth above, no federal claims remain in this case, the case has not reached trial yet, and the remaining claims arise under state law. Accordingly, the court declines to exercise supplemental jurisdiction over such claims.

## V. Conclusion

After a thorough review of the Report, objections, the record, and applicable law, the court overrules Dr. Thomas's objections and adopts the Report (ECF No. 42) as if set forth fully herein. The court **GRANTS IN PART** Defendants' Motion for Summary Judgment, (ECF No. 30), as to

the federal claims asserted in this action. Furthermore, having resolved all such federal claims, the court declines to exercise supplemental jurisdiction over the remaining state-law causes of action, *see* 28 U.S.C. § 1367(c), and overrules Defendants' objection to the Report. The state-law claims are **DISMISSED without prejudice.** Defendants' Motion for Summary Judgment, (ECF No. 30), is **DENIED IN PART as moot** as to the state-law claims asserted in this action.

**IT IS SO ORDERED.**

s/Timothy M. Cain
Chief United States District Judge

September 28, 2026
Greenville, South Carolina